615 So.2d 267 (1993)
FLORIDA DEPARTMENT OF INSURANCE, Appellant,
v.
WORLD RE, INC., etc., et al., Appellees.
Nos. 91-2461, 91-2462.
District Court of Appeal of Florida, Fifth District.
March 12, 1993.
Bernard H. Dempsey, Jr., and Thomas H. Tukdarian, Dempsey & Associates, P.A., Winter Park, for appellant.
Brian S. Duffy, McConnaughhay, Roland, Maida, Cherr & McCranie, P.A., Tallahassee, for appellees Euro Reinsurance Co., LTD., and Compagnie De Reassurance Des Etats Unis Et Continentale.
*268 Stephen W. Pickert, Moye, O'Brien, O'Rourke, Hogan & Pickert, Orlando, for appellees World Re, Inc. and Matthew D. Bonar.
HARRIS, Judge.
This appeal raises the issue of whether a contract provision requiring arbitration of disputes concerning the interpretation of the contract is broad enough to also encompass disputes which arise from a claim of fraudulent inducement.
In November, 1990, the Department of Insurance (the Department), in its capacity as receiver for the International Forum of Florida Health Benefit Trust ("IFFHBT"), filed a 35-page complaint against multiple defendants (the defendants) alleging fraud, conspiracy to commit fraud, breach of contract, civil theft, conspiracy to commit civil theft, violation of Florida RICO, and conspiracy to violate Florida RICO. In response, the defendants filed a motion to compel arbitration based on the following provision contained in the insurance contract upon which the Department's breach of contract claim was based:
Should an irreconcilable difference of opinion arise as to the interpretation of this certificate, it is hereby mutually agreed that as a condition precedent to any action hereunder, such difference shall be submitted to arbitration ...
The trial court granted the defendants' motion based on Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), which holds that, where the allegations of a complaint allege fraud in the inducement as to the entire contract and not as to the arbitration provision specifically, arbitration is still required. The Department appealed and in its initial brief stated that it had voluntarily dismissed the breach of contract count and that the remaining claims were not based upon the contract itself. Therefore, the Department argued, the arbitration provision of the contract did not apply.
This court then issued an order to show cause why the trial court should not reconsider the arbitration issue in light of the Department's voluntary dismissal of its breach of contract claim. In response, the Department argued that their cause of action against the defendants arose primarily from allegations of fraud and that the contract containing the arbitration provision was a worthless document used only to facilitate the commission of the fraud. The defendants' response correctly noted that the trial court did not expressly rely on the breach of contract claim in ordering arbitration and that a claim need not be based upon a contract in order to require arbitration pursuant to a provision contained in that contract.
On June 15, 1992, this court relinquished jurisdiction to the trial court to consider the Department's motion to amend its complaint and to determine if the amended complaint continued to raise issues requiring arbitration pursuant to the contract. On June 26, 1992, the trial court rendered an order granting the Department's motion for leave to amend its complaint, which the Department promptly did. The breach of contract count was eliminated. In addition, and presumably to bring the complaint within the rule enunciated in Prima Paint, the Department alleged fraud in the inducement as to the arbitration provision specifically. Because the trial court did not address the issue of arbitration when it allowed the Department to amend its complaint, the Department requested that this court once again temporarily relinquish jurisdiction. We did and on February 9, 1993, the trial court rendered an order granting the defendants' motion to compel arbitration.
Federal courts[1] have had much to say on the subject of arbitration (some of which appears contradictory) which we use to analyze the issue on appeal: "In view of the favorable policy towards arbitration, doubts as to whether an arbitration clause may be interpreted to cover the asserted *269 dispute should be resolved in favor of arbitration unless a court can state with "positive assurance" that this dispute was not meant to be arbitrated." Hussey Metal Div. of Copper Range Co. v. Lectromelt Furnace Div., McGraw-Edison Co., 471 F.2d 556 (3d Cir.1972) (citations omitted). Unless excluded, claims of fraud in the inducement of a contract are arbitrable. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). But, "The scope of an arbitration clause, like any contract provision, is a question of the intent of the parties." S.A. Mineracao Da Trindade-Samitri v. Utah Int'l, Inc., 745 F.2d 190 (2d Cir.1984). Moreover, "Arbitration is a matter of contract, and a party cannot be forced to arbitrate something [to] which he did not agree ..." Hussey at 557 (citations omitted). See also G & N Constr. Co. v. Kirpatovsky, 181 So.2d 664 (Fla. 3d DCA 1966); Seaboard Coast Line R.R. Co. v. Trailer Train Co., 690 F.2d 1343 (11th Cir.1982).
In determining whether a dispute must be submitted to arbitration, the scope of the arbitration provision governs. See, e.g., Mediterranean Enters., Inc. v. Ssangyong Corp., 708 F.2d 1458 (9th Cir.1983) and cases cited therein. In In re Kinoshita & Co., Ltd., 287 F.2d 951 (2d Cir.1961), the court held that a clause which required arbitration "if any dispute or difference should arise under this Charter" did not encompass a dispute based on fraudulent inducement. The court recognized the trend toward submitting fraudulent inducement claims to arbitration but held that,
[W]here the clause restricts arbitration to disputes and controversies relating to the interpretation of the contract and matters of performance, fraud in the inducement is not included. The agreement to arbitrate is limited to such matters as those just enumerated when it refers to disputes or controversies "under" or "arising out of" the contract.
Id. at 953. [Emphasis added].
In the instant case, the arbitration provision limits issues requiring arbitration to differences of opinion arising from the interpretation of the contract:
Should an irreconcilable difference of opinion arise as to the interpretation of this certificate, it is hereby mutually agreed that as a condition precedent to any action hereunder, such difference shall be submitted to arbitration ...
This provision closely tracks the language of the Kinoshita opinion. Based on Kinoshita, then, it appears that the scope of the instant arbitration clause does not encompass the Department's fraudulent inducement claim.
Although Kinoshita has been called into doubt and its application limited in subsequent Second Circuit cases, these are distinguishable. In Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840 (2d Cir.1987), the court dealt with a provision which required arbitration of "all claims and disputes of whatever nature arising under this contract." Despite the fact that the provision contained the magic words "arising under," which the Kinoshita court held would not encompass fraudulent inducement claims, the Genesco court held that this arbitration clause was sufficiently broad to require arbitration of the plaintiff's fraud claims. In doing so, however, the court focused on the fact that the clause expressly provided that "all claims and disputes of whatever nature arising under" the contract would be subject to arbitration. (emphasis added) Therefore, Genesco is distinguishable as the instant provision contains no such broad wording.
In S.A. Mineracao Da Trindade-Samitri v. Utah Int'l, Inc., 745 F.2d 190 (2d Cir.1984), the Second Circuit limited the Kinoshita holding but expressly declined to overrule it. Rather, the court took great pains to "confine Kinoshita to its precise facts," and stated that "to ensure that an arbitration clause is narrowly interpreted, contracting parties must use the... phrase ["any dispute or difference aris[ing] under" the agreement] or its equivalent." Samitri at 914 (emphasis added).
The arbitration provision in Samitri required arbitration of "any question or dispute aris[ing] or occur[ring] under" the *270 agreement. Samitri at 194 (court's own emphasis). Having limited Kinoshita's holding as applicable to only certain wording or its equivalent, the court placed great emphasis on the addition of the words "question" and "occurring" in reaching its conclusion that Kinoshita was inapplicable to the Samitri facts. Because the instant provision did not require arbitration of "any question occurring under the agreement" but provided only for arbitration of irreconcilable differences concerning the interpretation of the contract, Samitri is inapplicable to this case.
The facts of Washburn v. Societe Commerciale de Reassurance, 831 F.2d 149 (7th Cir.1987), most closely align with those of the instant case. In Washburn, the arbitration clause provided:
Should any difference of opinion arise between [the parties] which cannot be resolved in the normal course of business with respect to the interpretation of this Agreement or the performance of the respective obligations of the parties under this Agreement, the difference shall be submitted to arbitration. [Emphasis added].
The plaintiff in the suit claimed that the various entities joined in a multifaceted, fraudulent scheme, one facet of which involved an agreement of reinsurance which contained the above provision. The court found that interpreting the agreement would not help to resolve the issues the plaintiff raised in its lawsuit and held that the dispute was not subject to arbitration. The heart of the opinion focused on the fact that the central allegations of the litigation did not involve issues regarding the interpretation of the agreement as the arbitration clause required. The court noted that, "[E]ven if every word of the reinsurance agreement was interpreted, this case would be no closer to a resolution." Id. at 151.
In the instant case, the same rationale applies. The Department alleges fraudulent inducement, civil theft, RICO violations, and conspiracy. None of these issues appear to require any interpretation of the agreement in question. Therefore, based on Washburn, a 1987 case from the Seventh Circuit which appears to recognize the rationale first enunciated by the Second Circuit in Kinoshita, a 1961 case, the arbitration provision in the instant case is too narrow to encompass the claims raised in the amended complaint. In short, regardless of the "favorable policy" toward arbitration, IFFHBT simply did not contract or agree to arbitrate issues involving fraud, civil theft, RICO, and conspiracy. Rather, the language is narrowly tailored to limit the arbitration requirement to disagreements regarding the interpretation of the contract, something that is not necessary to resolve the issues raised in the amended complaint.
The trial court's and the defendants' reliance on Prima Paint is misplaced.[2] While the holding in that case does support the argument that a claim of fraudulent inducement may be within the scope of an arbitration agreement, the specific provision in Prima Paint required arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof ..." The Kinoshita court expressly recognized this language as being sufficiently broad to cover a claim of fraudulent inducement. But the court went on to explain that this "standard clause recommended by the American Arbitration Association and widely used," was NOT used in the Kinoshita case. Neither was it used in the instant case now before this court. Rather, a much more narrow provision was utilized. Therefore, Prima Paint is inapplicable to the case on appeal.
REVERSED and REMANDED for further action consistent with this opinion.
GOSHORN, C.J., and COBB, J., concur.
NOTES
[1] The trial court determined that the contract in question involved interstate commerce and therefore fell within the United States Arbitration Act. Consequently, we have relied upon federal case law in our analysis and decision in this case.
[2] The trial court relied on Prima Paint in its first order requiring arbitration. Although it did not cite this case in its second order, because it did not change its ruling, presumably it continues to find Prima Paint controlling.